# Hughes *v.* Miller, Appellant.

*Sheriff's sale—Purchaser—Second sale—Responsibility for difference in bids.*

A purchaser at sheriff's sale who defaults on his bid is liable for the difference between the price he bid at the first sale and the amount which the property brought at a subsequent sale.

*Sheriff's sale—Purchaser—Second sale—Difference in bids—Equity in distribution*

J. died seized of a house and lot leaving a widow and minor child. The property was subject to a judgment. The widow occupied the property and out of her earnings reduced the judgment. An administrator of J. was appointed who borrowed on mortgage sufficient to pay off the judgment. The widow became indebted to M. and failed to pay the interest on the mortgage. It was foreclosed and M. purchased the property to protect his debt. The widow not being satisfied with this, M. agreed that the sheriff's sale should be set aside, the property resold and be purchased by the widow who was to borrow on mortgage sufficient to pay all debts except M.'s; he was to take a judgment subsequent in lien to the mortgage. The property was again put up and purchased by the attorney for the widow at a price much less than it brought at the first sale, M., because of the agreement between him and the widow, not bidding. The sheriff at the instance of the widow and the guardian of the minor child brought suit against M. to recover the amount of the difference in the bids. *Held*, that the sheriff was entitled to recover; that the judgment against M. constituted part of the estate of J.; that the sheriff should pay the amount recovered to the administrator of J. who should file an account; and that the orphans' court should award the amount which would go to the widow to M., and the balance to the guardian of J.'s minor child.

Argued April 20, 1903. Appeal, No. 115, Jan. T., 1902, by defendant, from judgment of C. P. Blair Co., June T., 1895, No. 174, on verdict for plaintiff, in case of T. D. Hughes *v.* Frank M. Miller. Before DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Action to recover the difference in the price bid at sheriff's sales. Before JOHN STEWART, P. J., 39th judicial district, specially presiding. For previous reports of this case, see 186 Pa. 375; 192 Pa. 365.

The facts appear by the opinion of the Supreme Court.

Verdict and judgment for the plaintiff for $2,143.65. Defendant appealed.

*Errors assigned*, among others, was in not giving binding instructions for the defendant.

*Thomas H. Greevy*, with him *Edmund Shaw* and *Andrew H. McCamant*, for appellant.

*H. C. Madden*, of *Madden & Madden*, and *H. T. Heinsling*, for appellees.

OPINION BY MR. JUSTICE DEAN, May 4, 1903:

This case is now before us for the third time; the facts are somewhat complicated. It appears that James Judge of Altoona died in June, 1883, intestate, leaving a widow, Alice Judge, and a minor child, Ella Donithen. He left no personal estate but was the owner at his death of a house and lot which was the home of the widow and child; there was an unpaid judgment lien against the property of $1,600. The widow occupied the property and kept boarders; out of her own earnings she paid money on the judgment until it was reduced to the sum of $600. In 1886 an administrator was appointed who borrowed on mortgage sufficient money to pay off the $600. The defendant Miller kept a grocery and gave the widow credit for groceries to the amount of $800 that she might carry on the boarding house. The widow failed to pay the interest on the mortgage given for money borrowed to pay her husband's debts; the mortgage was foreclosed and the property sold at sheriff's sale for $2,535 to Miller, who purchased to protect his own debt of $800. The widow was not satisfied with this result; she wanted the title in her own name, believing she could borrow enough money to pay off all the debts including Miller's grocery bill; the debts not including the grocery bill amounted to about $1,100 and including it to about $2,000. After some negotiations between them she and Miller agreed that the sheriff's sale should be set aside, the property resold and be purchased by the widow who would then borrow on mortgage in her own name enough to pay all the debts except Miller's; for this last she would give him a judgment next in lien

to the first mortgage.   In accordance with this agreement the property was again put up for sale by the sheriff and purchased for her by her attorney who afterwards conveyed it to her.   Miller, because of the agreement between him and the widow, did not bid at the second sale nor take any steps to protect himself from liability for the purchase money on the first sale.   At the second sale the property was knocked down to the widow at the price of $1,100.   She then borrowed for her necessities, on mortgage $1,300, and also gave Miller a judgment for his debt of $800 ; after holding the property a short time she sold it at private sale for a sum more than enough to pay the mortgage and judgment and they were paid accordingly.   It will be noticed that the difference in bids between the first sale at which Miller was the purchaser and the second sale at which Mrs. Judge was the purchaser was about $1,425.   This sum, with interest added and some other charges, made up a claim for which the sheriff at the instance of Mrs. Judge and the guardian of the minor child brought suit against Miller and obtained a judgment in the court below for $2,143.66.

It would answer no useful purpose after this lapse of time to criticize the proceedings in the court below from the death of Judge down to this judgment, a period of almost twenty years, and point out how by the mistaken acts of the attorneys a very long road round was adopted to reach a very plain purpose, at unnecessary expense and trouble to all concerned.   The object of both Miller and the widow at first was an entirely honest one ; she seems to have wanted to pay her husband's debts ; Miller wanted to help her to make money in the boarding house for that purpose, at the same time did not want to lose his debt ; he was willing to run very considerable risk to help her ; there was no attempt by him to take advantage of her or even to speculate in the purchase of the property.   With her consent, indeed at her request, he practically surrendered to her his purchase.

However, without regard to motive, this is practically an attempt on the part of the widow and child to make him pay dearly for his effort to aid the widow.   But he must pay for the consequences of the blundering methods adopted to set aside the first sale.   As a purchaser, he is under the law, clearly liable for the difference between the two bids, the amount of

this judgment. That constitutes part of the estate of James Judge. But the widow by the arrangement with Miller, in effect appropriated all that would otherwise have been coming to her to carry out a scheme adopted for her own benefit; this would, if her claim were allowed, be a gross wrong upon Miller and cannot succeed. Nevertheless, she could not bargain away any right of her minor child to the fund. Neither the sheriff nor the common pleas could undertake to apportion this fund; that is a matter for the orphans' court on a distribution of it. The money should be paid by the sheriff to the administrator who should file his account, then that court should, on the principles of this decision, distribute the balance; any sum that should go to the widow would be payable to Miller; any excess would go to the guardian of the minor child.

The judgment is affirmed and the appeal dismissed.